Hillsborough,
No. 4798.

MARY HANLON *v.* LOUISE P. POMEROY.

Argued December 2, 1959.

Decided January 27, 1960.

*Sheehan, Phinney, Bass, Green & Bergevin* and *Richard A. Morse* (*Mr. Morse* orally), for the plaintiff.

*Devine, Millimet & McDonough* (*Mr. Shane Devine* orally), for the defendant.

WHEELER, J. The plaintiff's first contention is that the Court erred in permitting the jury to determine the future duration of the plaintiff's nervous condition. The defendant requested the following instruction:

"8. You are instructed that there is no evidence that the

nervous condition of the plaintiff will be permanent, nor is there any evidence from which you can find that it will continue for any period in the future."

The Court refused to instruct the jury in accordance with this request and on this point instructed the jury as follows:

"With reference to her nervous condition, it can be said that she had a nervous condition. You will determine yourselves from the evidence as you received it what future nervous condition she will suffer, how it will affect her in the future, as best you can, being reasonable men, and you may award her just compensation for whatever you determine that to be."

The defendant's request to withdraw from the jury the question of the future duration of the plaintiff's nervous condition was based upon the testimony of a neuropsychiatrist, who testified that the plaintiff was suffering from an emotional disturbance caused by the accident and associated with her disfigurement which made her reluctant to appear socially, or in public. With respect to the future course of this emotional disturbance, the witness testified as follows:

"Q. Do you have a prognosis as to her condition? A. Uncertain. Q. You mean it's uncertain as to . . . A. (Interrupting) You hope she will get well and you fear that she won't."

The defendant contends that this testimony could not support any verdict for future damages for her nervous condition since it would permit the jury to speculate. *Durivage* v. *Tufts*, 94 N. H. 265.

While the answer of the plaintiff's expert as to the prognosis of plaintiff's nervous condition was not expressed in the classical terms of probabilities, it is our view that the language used indicates the existence of a condition which would induce the belief in a reasonable mind of a probability that the condition would continue. The opinion here expressed is not unlike that in *Lynch* v. *Bissell*, 99 N. H. 473, 476, where it was held not error to submit to the jury the question of plaintiff's future injuries based upon the testimony of the plaintiff's expert expressed in these terms: "My opinion is that it will improve. When, God only knows."

In the case before us, other evidence indicated that the plaintiff's facial scars could be improved but not eliminated by plastic surgery, which would involve hospitalization for several days, followed by about ten days of post-operative care. The evidence

as a whole was sufficient to warrant a finding that the plaintiff's "nervous condition" would probably continue in the future pending further treatment of her facial scars, and thereafter for at least some further period of mental readjustment.

The defendant's exception to the failure of the Court to charge as requested is overruled.

We next consider whether the verdict was excessive. The law for the guidance of the Trial Judge has been stated as follows: " 'To justify the interference of the Court, the damages must be manifestly exorbitant; and so excessive as to warrant the belief that the jury must have been influenced by partiality or prejudice or have been misled by some mistaken views of the merits of the case.' *Belknap* v. *Railroad*, 49 N. H. 358, 371. The consideration of the defendant's motion involved questions of fact for the Judge and his decision should not be set aside unless no reasonable person would make it." *Roy* v. *Levy*, 97 N. H. 36, 39, 40.

The medical expenses total $1,129 which includes an estimate of $750 for future plastic surgery. The comparison which defendant seeks to draw between the relatively small special damages and the amount of the verdict is not persuasive. It is common knowledge that in certain injuries after costly surgery a patient may be completely cured, whereas in others no amount of surgery or medical care will ever restore the patient to his former state of health.

When the collision occurred, the plaintiff's head went through the windshield. She was bleeding badly and was taken to a hospital suffering minor shock. She had severe contusions and abrasions of both ankles and both knees. There were bruises on her left arm and a swelling of one ankle lasted for several weeks, requiring constant bandaging. There were several cuts, some irregular, on her forehead and nose varying in length up to 2½ inches. The plastic surgeon testified that three of the scars could be improved by such surgery but that there would still be some scarring, although her appearance would improve. The scar on the left eyelid would be permanent and could not be improved by surgery. The jury had the benefit of two photographs showing the plaintiff before and after the accident. From these photographs and the testimony of the plastic surgeon, the jury could find that a drastic change had occurred in her face which could be permanent and likely to cause her humiliation and emotional disturbance in the future.

The defendant's motion to set aside the verdict on numerous grounds, including the allegation that the verdict was excessive, was denied by the Trial Court. In this we find no error.

*Judgment on the verdict.*

All concurred.