Merrimack,
No. 5035.

BESSIE E. WELCH, *Adm'x*

*v.*

H. P. HOOD & SONS.

Argued May 1, 1962.

Decided June 29, 1962.

208

*Hartnett & Moher* (*Mr. Charles F. Hartnett* orally), for the plaintiff.

*Hamblett, Kerrigan & Hamblett* (*Mr. Joseph M. Kerrigan* orally), for the defendant.

KENISON, C. J. The defendant claims it was error to leave for the jury the specific issues of permanent injury to the plaintiff's back and his left knee and leg. The plaintiff was treated both before and after the accident by the attending family physician. The testimony of the family physician was that the plaintiff's complaints of weakness and pain in his back, left knee and leg were continuing and permanent conditions and were related to the accident. The defendant moved that this testimony be stricken because of the absence of any supporting facts to sustain it (*Challis* v. *Lake*, 71 N. H. 90, 95; *Parent* v. *Company*, 70 N. H. 199), pointing out that the X-rays were negative except for some unrelated senile osteoporosis. The physician called by the defendant to examine the plaintiff found nothing wrong clinically with his back, leg and knee, although he conceded "that one can have trouble with the back at certain times and not at other times." He further testified that the plaintiff's complaints with reference to his back were consistent with the accident and the hospital report which he had read. This physician also stated from his observation that what the plaintiff "complained about seemed to be a real complaint."

It is true that the testimony of the family physician was general rather than specific and that it was not buttressed by independent substantiating proof from the X-rays or other tests. However, these deficiencies went to the weight of the evidence rather than to its admissibility. *Pepin* v. *Beaulieu*, 102 N. H. 84; *Hanlon* v. *Pomeroy*, 102 N. H. 407; *Roy* v. *Levy*, 97 N. H. 36. This is not a case where there is a complete absence of expert testimony connecting the plaintiff's alleged injury to his back, leg and knee. *Bentley* v. *Adams*, 100 N. H. 377. The family physician was subjected to cross-examination so that the Judge and jury had an opportunity to observe the alleged deficiencies in that testimony. *Condiles* v. *Waumbec Mills*, 95 N. H. 127, 129. As was pointed out in *Bohan* v. *Company*, 98 N. H. 144, 147-148, "Appellate courts have been hesitant to determine whether the opinion of a doctor is medically sound when there is conflict within the medical profession itself . . . There is perhaps more reason for caution in this case since we are dealing with the testimony of the attending doctor who treated the decedent from the time of his injury to his death." See also, Annot. 66 A.L.R. 2d 1082. We conclude that the evidence of the attending physician was properly received. *Charles* v. *McPhee*, 92 N. H. 111; *Roy* v. *Chalifoux*, 95 N. H. 321; *Lynch* v. *Sprague*, 95 N. H. 485; *Leavitt* v. *Bacon*, 89 N. H. 383. Accordingly the

defendant's motion to withdraw from the jury's consideration any issue of permanent injury to the plaintiff's back, left knee and leg was properly denied. *Mazukna* v. *Powers*, 333 Mass. 331; Ray, Restrictions on Doctors' Testimony in Personal Injury Cases, 14 Sw. L. J. 133 (1960); Annot. 135 A.L.R. 516.

The shop superintendent at the plaintiff's place of employment as a machinist testified that the plaintiff was a steady worker, that he could not work as well after the accident as before the accident, that his arm was weak, that he required assistance in his work. He further testified that he had authority to recommend increases in wages and that "the company has always stood behind it." The first wage increase of twenty-five cents an hour, which was recommended by the shop superintendent after the accident, did not apply to the plaintiff because of the plaintiff's condition following the accident. On the basis of this evidence plaintiff's counsel argued to the jury that he would continue to lose this twenty-five cents an hour increase for such period of time that the jury found he "could have worked but for this accident." This evidence was objected to as speculative and the argument of counsel as prejudicial. There was abundant evidence from other sources that the plaintiff's earning capacity had been impaired and the plaintiff was subject to pain, suffering and discomfort after he returned to work. In view of this evidence in the case the argument concerning the loss of the twenty-five cents an hour increase was a permissible one.

The defendant's contention that the verdict of $24,166.67 was excessive presents a more difficult problem. Although there is a conflict in the medical testimony as to the permanency and extent of plaintiff's injuries, it is not disputed that he had a permanent numbness of the forehead area, at least thirty per cent permanent disability of the right wrist which affected his grip and that he still complained of tiredness, inability to do heavy work and pain in his back. Additionally there was evidence of aggravated nervousness and asthma, as well as the aggravation of a condition of gastritis resulting in an ulcer. His social life was affected because of his nervousness and tired condition. The jury were entitled to consider as an element of damage the plaintiff's pain and suffering not only from those injuries that were obvious and undisputed but also from those which were in dispute including the left leg and back.

It is pointed out that the medical expenses total only $519.50 and that the verdict is excessive even if weight is given to the fact

that the plaintiff's nervousness and asthmatic condition are considered as permanent. While a verdict for a lesser amount would find support in the record on the basis of the defendant's evidence, we cannot say the verdict rendered is without foundation on the entire record. See *Hanlon* v. *Pomeroy*, 102 N. H. 407; *Pike* v. *Scribner*, 103 N. H. 203; Annot. 16 A.L.R. 2d 117.

*Judgment on the verdict.*

All concurred.