Hillsborough, ⎫ No. 3155.
May 7, 1940. ⎬

RICHARD COLEMAN, *by his father and next friend,*

*v.*

CLIFFORD E. STACY.

SUMNER COLEMAN *v.* SAME.

*Chretien & Craig*, for the plaintiffs.

*McLane, Davis & Carleton* (*Mr. Carleton* orally), for the defendants.

MARBLE, J. The defendant testified that the accident occurred in the narrow space between the city refuse truck, which stood at the curb on his left, and a car parked on the opposite side of the street; that he decreased his speed to fifteen or eighteen miles an hour as he entered this narrow space, and that the plaintiff appeared suddenly in front of the left fender of his car. There is nothing in his testimony to warrant the inference that he saw or ought to have seen the plaintiff in time to avoid the accident.

The witness Elizabeth M. Gray described the accident as follows: "I was sitting at the kitchen window and Mr. Barrett was on his porch across the street, and he came down from his porch to the sidewalk and, as he did, Richard ran across the street . . . . My brother-in-law's car was parked on the south side of Central Street, and just as Richard got across the street and stood beside Mr. Barrett the city truck came down and parked in front of their house to take the garbage. . . . I didn't see the truck move, but they had evidently started to move, and right then Richard darted in back of the truck, and just then the Stacy boy came through between the truck and the parked car, and then he struck Richard . . . . I ran downstairs just as fast as I could, and when I got to the street the Stacy boy was holding Richard under the arms."

When asked if she observed the speed of the defendant's car, she answered: "Well, I didn't. I really couldn't because he went right between these two cars, and after he had hit Richard he stopped almost instantly."

In reply to the inquiry, "Was Richard traveling at a pretty good rate for a youngster?" she said: "He seemed to be going quite fast, I should say." And again: "He was going right across the street, I couldn't say how fast. He was running as most youngsters do." To the question, "He darted out, you say, from behind the truck?" she answered: "From behind the truck."

The assertion of plaintiff's counsel that a child of the plaintiff's age could not run faster than three miles an hour and that it must have taken four seconds for him "to go from the north curb to the point of the impact" is unsupported by evidence.

The driver of the truck and the men working with him testified that the truck was on the south side of the street when the accident occurred and that the defendant passed to the north of the truck. Their testimony was conflicting as to whether or not a car was parked on the north side of the street opposite the truck. It was undisputed, however, that rubbish receptacles, which might have concealed the plaintiff from the defendant's view, were standing near an elm tree at the curb in front of the Barrett house.

There is no evidence that the defendant's speed was excessive or that he was not watching the road. No witness except Mrs. Gray saw the plaintiff until he was struck, and the only reasonable inference to be drawn from her testimony is that he darted into the street so suddenly that the defendant had no chance to prevent the accident.

The fact that Mrs. Gray may have been mistaken as to the position of the truck is unimportant, for even if her entire testimony were discredited, the case would still be barren of evidence tending to establish the defendant's fault. Disbelief in testimony concerning particular facts does not convert that testimony into affirmative proof of contrary facts. *Zwiercan* v. *Company*, 87 N. H. 196, 198, and cases cited.

*Judgments for the defendant.*

All concurred.