Hillsborough,} No. 3466.
Mar. 7, 1944.}

ROBERT MARTINEAU, *Adm'r v.* ERNEST WALDMAN.

*Thomas J. Bois* and *Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Louis E. Wyman* orally), for the plaintiff.

*Charles F. Hartnett* (by brief and orally), for the defendant.

JOHNSTON, J.   The automobile accident that caused the death of the child Robert Martineau, Jr. happened on Douglas Street in Manchester, Saturday, October 17, 1942, about ten o'clock in the morning.   The defendant driver of the Chevrolet that ran over the child came northerly on West Street and turned the corner westerly into Douglas Street.   An eighteen foot truck was parked on his right in front of Workmen's Hall, which had a street frontage of about fifty feet, four or five feet westerly of the door in the center of the building.   An alleyway separated this building from Hecker's store, which was next to the west.   Then was Fred's restaurant in front of which the defendant intended to park for the purpose of leaving bread.   The child came from the defendant's right near the front of the truck and was going diagonally in a straight line toward three children who were standing by a pole on the southerly side of the street about one hundred feet from West Street.   He was run over by the two left wheels of the Chevrolet.   The exceptions of the defendant raise the question of whether reasonable men could find that he was causally negligent.

The driver testified that he did not see the deceased until told by one of the children that he had run over a child, and it lay ten feet or so in the rear of his car just southerly of the middle of the street. There is evidence from which it could reasonably be found that the defendant should have anticipated a child coming into the street from concealment by the truck.   He saw three children on the southerly sidewalk.   He had been following this route every day for six weeks and knew that Douglas Street was always full of children particularly on Saturday mornings.   Twice shortly before the day of the accident he had to stop in the middle of the street and speak to children so that he could go ahead.   He knew that they were quite intent on their own purposes.

The defendant proceeded westerly within a foot or a foot and a half of the truck at a speed estimated by himself to be from eight to ten miles an hour.   He testified: "As I just passed half, I wanted to park in front of that truck, and if you want to swing in you've got to look to your right where you are going, so I did and still had my glance to those three children on the left."   In a deposition he had testified that his attention was on the other (left) side of the street.

He did not see Robert although the latter passed in front of the car to the left side. The driver said that his attention was also taken by a boy who came along on a scooter. The boy is not placed more definitely and although the three children testified, no one else saw this boy. The jury were not obliged to believe that there was such a person on a scooter. It was a question for the jury whether the defendant did not give attention to his left rather than to his right and whether if so he was not negligent under the circumstances.

Perhaps the most serious question is whether assuming that the defendant had seen Robert when he first came into view and that he was traveling at a speed reasonable under the circumstances he could then have prevented the accident. In other words was any negligence of the defendant causal? This child less than three years old ran but with little short steps a findable distance of some eight feet from the point where he could first be seen to the left side of the Chevrolet—diagonally across the width of the car plus the foot or foot and a half from the truck plus the distance northerly of a line parallel with the southerly side of the truck. This last distance would have to be estimated but it would vary with the distance of the child westerly of the truck and the distance of Mr. Waldman as he sat on the left of the car southerly of the truck and easterly of its front end. It is difficult to apply arithmetic to human conduct because of the lack of exactness in the factors. However the jury could reasonably find that the Chevrolet went twenty-five or more feet from the time the child was first visible to the instant of contact. At the speed of his car, the defendant testified that his foot could have been on the brake in a fraction of a second and the car stopped in six or seven feet after that.

In *LaPolice* v. *Austin*, 85 N. H. 244, the driver had twenty-five to thirty feet to swing to the left and avoid an accident after he should have seen a seven-year-old child. An exception to the denial of a motion for a directed verdict was overruled. "So, also, the motorist is liable if the circumstances are such that he may reasonably anticipate that a child is about to run in front of his machine, or if he sees or should have seen the child soon enough to have avoided the injury." 5–6 Huddy, Automobile Law, *s*. 43, citing certain cases. The instant case is not one of a child running into the side of or in front of a car without notice to the driver who is proceeding on the highway in a reasonable manner and who has not time for saving action as in *Coleman* v. *Stacy*, 91 N. H. 60. The motions for a nonsuit and for a directed verdict were properly denied.

A parent who has charge of a child too young to exercise due care

has a duty to use reasonable care to see that it does not get into danger. *Bullard* v. *McCarthy*, 89 N. H. 158; *Humphreys.* v. *Ash*, 90 N. H. 223. The jury found that the mother was causally negligent in the performance of this duty. There was evidence that she allowed the child to go out of the house without anyone attending the child to prevent it from getting into the streets. Accordingly she cannot benefit from her own fault. *Niemi* v. *Railroad*, 87 N. H. 1, 13, 14. The Superior Court may stay judgment until the Probate Court has determined the expenses of recovery, the expenses of administration, the necessary charges for the burial of the deceased and the reasonable charges for the last sickness in accordance with R. L., *c.* 355, *s.* 14. Upon the assumption that the expenses of recovery and the expenses of administration are not affected by the order reducing the verdict, judgment should then be entered for one half of the verdict plus one half of the above named expenses and charges ascertained by the Probate Court.

*Exceptions overruled.*

All concurred.