Patterson v. Star Island Corp.        CV-92-400-B    02/19/93
              UNITED STATES DISTRICT COURT FOR THE

                  DISTRICT OF NEW HAMPSHIRE

Robert B. Patterson, et al.

_____v.                                Civil No. 92-400-B

The Star Island Corporation, et al.


                        **O R D E R**


     This personal injury action arose out of events that

occurred on August 6, 1989, while plaintiffs were attending a

conference held on an island located off the coast of New

Hampshire which is owned and operated by defendant, The Star

Island Corporation.  Various motions have been made pursuant to

Federal Rule of Civil Procedure 12(b)(6) to dismiss certain

claims and counterclaims.


                         **FACTS**

     The following facts are stated in a light most favorable to

the plaintiffs.

     The Star Island Corporation is a non-profit organization

which permits various groups to schedule conferences on its

island for a fee.  Persons attending these conferences frequently

stay overnight, and it is not unusual for them to bring their children.  The Star Island Corporation owns and operates the living quarters, and it allows visitors to use its recreational facilities and sporting equipment.  Complaint ¶¶ 12-16.

On the morning of August 6, 1989, defendant Robert Pletz, age ten, while attending the conference with his parents, walked to a ballfield on Star Island, picked up a wooden bat lying on the ground, and began hitting softballs into the air.  Id. ¶ 19.  Plaintiff Jordan Patterson, age five, was on the stairs of the Oceanic House adjacent to the ballfield when he became "attracted" to the field and wandered to where defendant Robert Pletz was hitting the softballs.  Id. ¶ 21.  Moments later, Jordan was struck in the head as Robert Pletz swung the bat to hit a softball.  Id. ¶ 22.

Plaintiff Robert Patterson, Jordan's father, was "approximately twenty-five (25') feet away at the top of the stairs of the Oceanic House leading to the ballfield" when the incident occurred.  Id. ¶ 23.  Mr. Patterson "immediately heard the gasp of others near him who were on the porch of the Oceanic House," and he "quickly realized his son had been seriously injured and went to his side where he observed the tragedy which had befallen his son."  Id. ¶¶ 24-25.  Plaintiff Mildred

2

Patterson, Jordan's mother, was "approximately sixty (60') feet away in the Arts and Crafts Room at the end of the porch of the Oceanic House" when her son was injured.  Id. ¶ 26.  Like her husband, Mrs. Patterson did not witness the event.  Rather, she "learned of the incident within five minutes of its occurrence and immediately went to her son's side who was lying on the ground of the ballfield" where she "observed that her son was seriously injured."  Id. ¶¶ 27-28.

**DISCUSSION**

Robert, Mildred, and Jordan Patterson brought suit against Robert Pletz and his mother, Deborah Pletz, as well as The Star Island Corporation and an unnamed employee, "John Doe."  The defendants, in response, filed counterclaims against the Pattersons.  The court is now asked to consider various motions to dismiss.  With respect to the complaint, the court must determine (i) whether it states claims cognizable under New Hampshire law for negligent infliction of emotional distress and negligence by a landowner, and (ii) whether the "John Doe" defendant was properly served.[1]  When reviewing the

_____

[1]Per the agreement of the parties, see document no. 25, Counts V and VI of the complaint alleging negligent supervision by Mrs. Pletz were dismissed.  Thus, the court need not address

3

counterclaims, the court must decide whether the counterclaims state claims for contribution or negligent conduct supporting a request for attorney's fees.

I.   STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the court to review the allegations of the complaint in the light most favorable to plaintiff, accepting all material allegations as true, with dismissal granted only if no set of facts entitles plaintiff to relief. See, e.g., Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Berniger v. Meadow Green-Wildcat Corp., 945 F.2d 4, 6 (1st Cir. 1991); Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989).  A Rule 12(b)(6) motion may also be used to challenge the sufficiency of a claim for relief set out in a counterclaim.  See North Carolina Nat. Bank v. Montilla, 600 F.2d 333, 334 (1st Cir. 1979).  When considering a motion to dismiss a counterclaim, the court must similarly accept the truth of the allegations in the counterclaim and give the counterclaim plaintiffs the benefit of all reasonable inferences helpful to their case.

_____

defendants' motion to dismiss these counts for failure to state a negligent supervision claim.

4

II.  COMPLAINT

   A.  Negligent Infliction of Emotional Distress

   Robert and Mildred Patterson filed claims for negligent infliction of emotional distress against Deborah Pletz and Robert Pletz.  The Pletzes brought a partial motion to dismiss, which included a request to dismiss all emotional distress claims brought against them.[2]  The Pattersons consented to the dismissal of Mrs. Patterson's claims for negligent infliction of emotional distress (Counts VIII and XII).  Thus, the court need only determine whether Mr. Patterson's claims against the Pletzes for negligent infliction of emotional distress (Counts VII and XI) should be dismissed.

   A bystander's cause of action for negligent infliction of emotional distress requires proof of both the causal negligence of the defendant and the foreseeability of the alleged harm.  See Corso v. Merrill, 119 N.H. 647, 654 (1979).  This latter requirement demands (i) a close relationship between the bystander and the victim, (ii) geographic proximity to the

_____

   [2]The Pattersons also each brought negligent infliction of emotional distress claims against The Star Island Corporation (Counts III and IV) and "John Doe" (Counts XV and XVI).  The motion by The Star Island Corporation and "John Doe" to dismiss these claims is based on different legal theories and will be considered in Sections II B and C.

accident, and (iii) a close connection in time between the negligent act and the resulting distress.  Id. at 656-59.  The temporal component of foreseeability requires that there be direct emotional impact upon the bystanders through their "contemporaneous sensory perception of the accident and immediate observance of the accident victim . . . ."  Id. at 658.  Finally, the resulting emotional distress must be accompanied by objective physical injury.  Id.

The New Hampshire Supreme Court in Corso allowed parents of a daughter struck and killed by defendant's car to recover for physical injuries caused by their direct emotional impact through their contemporaneous perception of the event.  Id.  Mrs. Corso was in her kitchen when she heard a "thud" and then, looking out the window, saw her daughter lying seriously injured on the street outside their home.  Id. at 649.  Mr. Corso, who was also in the kitchen, neither witnessed nor heard the accident, but he responded to his wife's scream and immediately saw his child in the street.  Id.  The Court found that their allegations met the criteria of foreseeability and thus could withstand a motion to dismiss.  See id. at 658.

In light of its holding in Corso, the Court subsequently denied recovery to parents who viewed their child for the first

time following the accident in the hospital shortly after her death.  See Nutter v. Frisbe Mem. Hosp., 124 N.H. 791, 796 (1984).  The Court declined to extend liability in that case because to do so "would create a potential cause of action in every parent who learned, by any reasonable means, of his or her child's negligently inflicted death or injury, and as a result suffered emotional injury . . . ."  Id.  The Court reaffirmed that parents have "to be close enough to experience the accident first hand . . . ."  Id. at 795.  Five years later, the Court reiterated that the foreseeability doctrine prevents parents who neither saw nor heard the accident from recovering.  Wilder v. City of Keene, 131 N.H. 599, 603-05 (1989) (parents who first saw child in hospital one hour after accident found not to have met foreseeability criteria of geographic and temporal proximity).

In accordance with Corso and its progeny, this court denies the Pletz defendants' motion to dismiss Mr. Patterson's claim for negligent infliction of emotional distress.  The complaint alleges that Mr. Patterson was in close geographic and temporal proximity to the accident scene.  While Mr. Patterson did not witness the event, he allegedly was located twenty-five feet from where his son was injured and, like the father in Corso, he reacted to the noise of those around him and immediately

7

discovered his son's injury.  Furthermore, in reading the complaint in the light most favorable to plaintiff, the court is not prepared to hold that Mr. Patterson, who now claims to suffer from depression and anxiety, does not allege any physical consequences as a result of his immediate sensory perception.

B.   "John Doe" Pleading

The Star Island Corporation seeks the dismissal of all claims against "John Doe" due to insufficiency of process.  The Corporation argues further that there is no Federal Rule of Civil Procedure or statutory provision permitting "John Doe" pleadings, and any such rule would implicate serious due process concerns. The court finds merit in the former argument.

While "John Doe" pleadings are not per se improper, see Berniger, 945 F.2d at 5, plaintiffs must still comply with the rules governing service of process.  In the instant case, the 120-day period to effect service of process under Rule 4(j) of the Federal Rules of Civil Procedure has elapsed, and plaintiffs have not sought to extend the period to complete service on "John Doe."  Plaintiffs have also failed to demonstrate good cause as to why service was not completed within the period contemplated by the rules.  Accordingly, the court grants the motion to dismiss "John Doe" without prejudice.  The court will not make a

determination at this time concerning whether any subsequent amendment substituting additional parties would be deemed to relate back to the complaint pursuant to Federal Rule of Civil Procedure 15(c).

C. Negligent Supervision/Duty of Landowner

The Star Island Corporation also moves to dismiss all of the claims brought against it on the ground that plaintiffs' entire complaint is based on allegations of lack of supervision which, given the facts of this case, is not cognizable under New Hampshire law. Because the court finds that plaintiffs' claims sufficiently allege that defendant breached its duty as owner and occupier of land, the court denies defendants' motion to dismiss.

Current New Hampshire law holds that landowners owe a duty of reasonable care to persons using their property. See Ouellette v. Blanchard, 116 N.H. 552, 557 (1976). A breach of that duty gives rise to a cause of action. See id. In the instant case, the court, after construing the complaint in a light most favorable to plaintiffs, cannot conclude that the complaint fails to state a cause of action for negligence against The Star Island Corporation. Accordingly, the court denies the motion to dismiss these claims.

9

III. COUNTERCLAIMS

    A.    Counterclaim by The Star Island Corporation and "John Doe"

The Star Island Corporation and "John Doe" have counterclaimed for contribution against Robert and Mildred Patterson, who now move for an order dismissing the counterclaim.

A right of contribution exists between persons who are "jointly and severally liable upon the same indivisible claim, or otherwise liable for the same injury . . . ." N.H. Rev. Stat. Ann. §507:7-f (Supp. 1991). The Star Island Corporation, with "John Doe," allege in their counterclaim that Robert and Mildred Patterson are liable in contribution because they negligently supervised their son and are thus joint tortfeasors.

Mr. and Mrs. Patterson rely on Towle v. Kiman, 134 N.H. 263 (1991) to support their motion to dismiss the counterclaim. Without ruling on whether an injured third party may ever maintain a claim for negligent parental supervision, the Court in Towle affirmed the dismissal of a negligent parental supervision complaint because the injured third party failed to allege conduct by the parents which was "socially unreasonable." Id. at 265. Like the defendants in Towle, the Pattersons allege that the counterclaim is defective because it fails to allege that their conduct was socially unreasonable.

10

The Star Island Corporation and "John Doe" apparently accept the Pattersons' contention that <u>Towle</u> requires an injured party to prove more than simple negligence to establish a negligent parental supervision claim. Nevertheless, defendants argue that <u>Towle</u> does not govern their counterclaim. Instead, they contend that their claim is controlled by several earlier New Hampshire Supreme Court decisions which held that when parents of an injured child sue a third party for negligence, the third party may defend the suit by arguing that the parents should be barred from recovery because of their simple negligence in failing to supervise their child. <u>See, e.g.</u>, <u>Hoebee v. Howe</u>, 98 N.H. 168, 173 (1953); <u>Martineau v. Waldman</u>, 93 N.H. 147, 149-50 (1944); <u>Cleveland v. Reasby</u>, 92 N.H. 518, 521 (1943); <u>Humphreys v. Ash</u>, 90 N.H. 223, 229 (1939). Defendants thus argue that their counterclaim survives a motion to dismiss because they need only allege simple negligence rather than socially unreasonable conduct. Alternatively, defendants claim that even if the counterclaim is governed by <u>Towle</u>, it survives because the Pattersons' alleged conduct was socially unreasonable.

The court rejects defendants' first argument that the tort of negligent parental supervision requires proof of socially unreasonable conduct when the claim is made by an injured third

11

party, but that simple negligence will suffice to establish a negligent parental supervision claim when such a claim is brought by an injured child or a joint tortfeasor based upon injuries suffered by the child. Although legitimate public policy considerations might justify a ruling preventing a child or a joint tortfeasor from ever suing a parent to recover for a child's injuries, such public policy considerations were addressed and disposed of by the New Hampshire Supreme Court when it abandoned the doctrine of parental immunity. See, e.g., Briere v. Briere, 107 N.H. 432, 434-36 (1966); Bonte v. Bonte, 616 A.2d 464, 465 (N.H. 1992). Accordingly, the court cannot conceive of a principled basis for subjecting a negligent parental supervision claim of a child or a joint tortfeasor suing on the child's behalf to a different legal standard than that which governs an injured third party's claim for negligent parental supervision. See, e.g., Duensing v. Tripp, 596 F.Supp. 389, 392 (S.D. Ill. 1984) (court declined to recognize a contribution claim for negligent parental supervision in part because Illinois law did not recognize a negligent parental supervision claim by an injured third party in similar circumstances). Because Towle is the New Hampshire Supreme Court's most recent pronouncement on the tort of negligent

12

parental supervision, the court will apply _Towle_ in considering the motion to dismiss the counterclaim.

Defendants' argument that the counterclaim survives the Pattersons' motion to dismiss because it meets the threshold test established in _Towle_ presents a more difficult issue. The counterclaim alleges only that the Pattersons had a duty to supervise their child, that they failed to fulfill that duty and that, as a result, their child was injured. Although the counterclaim provides little factual detail to support its conclusory assertions, such detail is not required so long as it contains "a generalized statement of facts from which the defendant will be able to frame a responsive pleading." _Garita Hotel Ltd. v. Ponce Federal Bank_, 958 F.2d 15, 17 (1st Cir. 1992) (quoting 5A C. Wright & A. Miller, _Federal Practice and Procedure_ § 1357 (1990)). Moreover, a Rule 12(b)(6) dismissal of a negligence claim is usually inappropriate. 2A James W. Moore, et al., _Moore's Federal Practice_ ¶ 12.07 [2.-5], at 12-66 n.11 (2d ed. 1992) (citing _Banco Continental v. Curtiss Nat'l Park_, 406 F.2d 510 (5th Cir. 1969)). Thus, a court should not deny defendants an opportunity to develop a record to support such a counterclaim unless the facts alleged in that counterclaim demonstrate that defendants cannot prevail under any viable

13

theory.  In the instant case, the court is not prepared to reach such a conclusion at this time.  Accordingly, the court denies the motion to dismiss the counterclaim brought by The Star Island Corporation and "John Doe."

B.    Counterclaim by Robert and Deborah Pletz

In their answer to the complaint, Robert and Deborah Pletz brought a counterclaim against plaintiffs for legal fees incurred as a result of having to defend this suit.  Plaintiffs filed a motion to dismiss the counterclaim for failing to (i) state a claim on which relief could be granted and (ii) allege damages on which recovery could be permitted.  The court grants plaintiffs' motion.

Attorney's fees may be proper and sufficient damages in cases where defendants assert a tort of malicious prosecution or a civil action for abuse of process.  See 8 Richard B. McNamara, New Hampshire Practice:  Personal Injury Tort and Insurance Practice §§ 38-40 (1988).  Alternatively, persons may recover attorney's fees in federal court under certain circumstances pursuant to Rule 11 of the Federal Rules of Civil Procedure.[3]  In the present case, defendants have not brought a claim for

_____

[3]Keenan v. Fearon, 130 N.H. 494, 502 (1988), relied on by the Pletzes, is the state law analogue to Rule 11.  It does not establish a distinct cause of action cognizable in federal court.

14

contribution. Nor have they claimed a right to recover attorney's fees for malicious prosecution or abuse of process. Finally, they are not seeking attorney's fees for a violation of Rule 11. Instead, they appear to claim that (i) their liability should be negated because of plaintiffs' conduct, and (ii) they have suffered damages in the form of attorney's fees by having to respond to the complaint. These claims are not cognizable under New Hampshire law as distinct causes of action. Accordingly, the court grants plaintiffs' motion to dismiss the Pletzes' counterclaim.

## CONCLUSION

By agreement of the parties (see document no. 25), Counts V, VI, VIII, and XII of the complaint are dismissed. The court denies the Pletzes' motion to dismiss Mr. Patterson's claim for negligent infliction of emotional distress (document no. 7) and The Star Island's motion to dismiss the entire complaint against them (document no. 19). The court grants the request to dismiss the "John Doe" defendant for failing to make service pursuant to Fed. R. Civ. P. 4(j) within the time allowed by that rule (document no. 19). Finally, the court grants the Pattersons' motion to dismiss the counterclaim brought by the Pletzes

15

(document no. 14) but denies their motion to dismiss the counterclaim brought by The Star Island Corporation and "John Doe" (document no. 15).

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

February 19, 1993

cc:  Debra Weiss Ford, Esq.
     Corey M. Belobrow, Esq.
     W. Michael Dunn, Esq.